**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

ATAHIR MAHMOUD, et al.,

*Plaintiffs*,

v.

MEHMET OZ, et al.,

*Defendants*.

Case No.

**EXPEDITED CONSIDERATION REQUESTED**

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY RELIEF AND/OR SUMMARY JUDGMENT

## TABLE OF CONTENTS


TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

FACTUAL AND LEGAL BACKGROUND ........ 2

- I. Congress Establishes the Medicaid Program. ........ 2
- II. Medicaid Eligibility for SSI Recipients ........ 4
- III. PRWORA Requires the Same Eligibility for All SSI Recipients, Regardless of Immigration Status. ........ 6
- IV. H.R. 1 Did Not Amend Medicaid Eligibility Requirements for Noncitizen SSI Recipients. ........ 8
- V. CMS Issues Instructions to States that Federal Medicaid Funding is No Longer Available for Certain Noncitizen SSI Recipients. ........ 11
  - A. SHO Letter ........ 11
  - B. CMS State Implementation Tool ........ 13
  - C. CMS Technical Guide ........ 14
- VI. Plaintiffs File this Nationwide Class Action to Redress Severe Harms Caused by the Challenged Policies. ........ 14
  - A. Plaintiff Atahir Mahmoud ........ 15
  - B. Plaintiff Gerard Mayetela ........ 15
  - C. Plaintiff Lyubov Kodentsova ........ 16
  - D. Plaintiff Svitlana Pecherskykh ........ 16
  - E. Plaintiff M.E. ........ 17

LEGAL STANDARD ........ 18

ARGUMENT ........ 19

- I. Plaintiffs Are Likely to Succeed on the Merits of Their Claims (and Are Entitled to Summary Judgment). ........ 19
  - A. The SSI Medicaid Exclusion Violates the APA. ........ 20
    1. The SSI Medicaid Exclusion is a Final Agency Action. ........ 20
    2. The SSI Medicaid Exclusion is Contrary to Law and Exceeds Defendants' Statutory Authority. ........ 21

II. Plaintiffs' Requested Relief.......................................................................... 28

A. The Court Should Vacate the SSI Medicaid Exclusion. .......................... 28

B. The Court Should Declare that the SSI Medicaid Exclusion is Unlawful Because the Medicaid Act and PRWORA Mandate that All SSI recipients (Who Meet the State Categorical Eligibility Requirements) Are Entitled to Medicaid, Regardless of Immigration Status. .............. 29

C. The Court Should Issue an Injunction Prohibiting Defendants from Implementing the SSI Medicaid Exclusion and Ordering Defendants to Notify All States Participating in Medicaid of the Court's Order. ......... 30

1. Plaintiffs and the class are suffering irreparable harm. ................ 31

2. The Balance of the Equities and Public Interest Favors Relief. ...... 34

3. An injunction would have meaningful effect.................................... 36

CONCLUSION........................................................................................................ 38

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ass'n of Am. Univs. v. Nat'l Sci. Found.*,
788 F. Supp. 3d 106 (D. Mass. 2025) ... 29

*Assoc. Fisheries of Me., Inc. v. Daley*,
127 F.3d 104 (1st Cir. 1997) ... 19

*Bennett v. Spear*,
520 U.S. 154 (1997) ... 20

*Bos. Redevelopment Auth. v. Nat'l Park Serv.*,
838 F.3d 42 (1st Cir. 2016) ... 19

*Bruns v. Mayhew*,
750 F.3d 61 (1st Cir. 2014) ... 22

*California v. U.S. Dep't of Transp.*,
808 F. Supp. 3d 291 (D.R.I. 2025) ... 37

*Carr v. Becerra*,
No. 3:22cv988, 2023 WL 1280172 (D. Conn. Jan. 31, 2023) ... 34

*City of Providence v. Barr*,
954 F.3d 23 (1st Cir. 2020) ... 22

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ... 28-29

*County of King v. Turner*,
189 F.4th 819 (9th Cir. 2026) ... 35

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ... 20

*Dorcas Int'l Inst. of R.I. v. U.S. Citizenship & Immigr. Servs.*,
No. 26-cv-132, 2026 WL 2042424 (D.R.I. July 15, 2026) ... 35

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ... 24

*FEC v. Cruz*,
596 U.S. 289 (2022) ... 28

*Glob. Tower Assets, LLC v. Town of Rome*,
810 F.3d 77 (1st Cir. 2016) ... 21

*Harper v. Werfel*,
118 F.4th 100 (1st Cir. 2024) ... 20

*Harris v. McRae*,
448 U.S. 297 (1980) ... 3, 22

*Himes v. Shalala*,
999 F.2d 684 (2d Cir. 1993) .......... 5

*Illinois v. Noem*,
813 F. Supp. 3d 282 (D.R.I. 2025) .......... 29

*La. Pub. Serv. Comm'n v. FCC*,
476 U.S. 355 (1986) .......... 21-22

*Largess v. Supreme Jud. Ct. for State of Mass.*,
373 F.3d 219, 224 (1st Cir. 2004) .......... 30

*Maine Cmty. Health Options v. United States*,
590 U.S. 296 (2020) .......... 22-23, 24

*Martin Luther King, Jr. Cnty. v. Turner*,
785 F. Supp. 3d 863 (W.D. Wash. 2025) .......... 35

*Mass. Ass'n of Older Ams. v. Sharp*,
700 F.2d 749 (1st Cir. 1983) .......... 34

*Massachusetts v. Nat'l Inst. Health*,
770 F. Supp. 3d 277 (D. Mass. 2025), *aff'd,* 164 F.4th 1 (1st Cir. 2026) ... 29, 34-35

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) .......... 30-31, 36-37

*Morton v. Mancari*,
417 U.S. 535 (1974) .......... 23, 24, 27

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
551 U.S. 644 (2007) .......... 24, 26, 27

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012) .......... 4

*Nat. Res. Def. Council, Inc. v. Morton*,
337 F. Supp. 167 (D.D.C. 1971) .......... 38

*Neighborhood House v. U.S. Dep't of Health & Hum. Servs.*,
No. C26-3006-TSZ, 2026 WL 2935933
(W.D. Wash. Sept. 30, 2026) .......... 2, 21, 23, 25, 34

*New York v. Trump*,
811 F. Supp. 3d 215 (D. Mass. 2025) .......... 21

*New York v. U.S. Dep't of Just.*,
No. 1:25-cv-00345-MSM-PAS, 2026 WL 2823528 (D.R.I. Sept. 21, 2026) .......... 36

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 19, 34

*NLRB v. SW Gen., Inc.*,
580 U.S. 288 (2017) .......... 27

*Noland v. Shalala*,
12 F.3d 258 (D.C. Cir. 1994) .......... 8

*Ortiz-Bonilla v. Federacion de Ajedrez de P.R., Inc.*,
734 F.3d 28 (1st Cir. 2013) .......... 30

*R.I. Coal. Against Domestic Violence v. Bondi*,
794 F. Supp. 3d 58 (D.R.I. 2025) .......... 18

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012) .......... 26

*Radzanower v. Touche Ross & Co.*,
426 U.S. 148 (1976) .......... 23, 26

*Texas v. Cardona*,
743 F. Supp. 3d 824 (N.D. Tex. 2024) .......... 37

*United States v. Lahey Clinic Hosp., Inc.*,
399 F.3d 1 (1st Cir. 2005) .......... 23-24

*Univ. of Wash. Med. Ctr. v. Sebelius*,
634 F.3d 1029 (9th Cir. 2011) .......... 22

*Viscito v. Nat'l Plan. Corp.*,
34 F.4th 78 (1st Cir. 2022) .......... 19

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 18-19

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*,
778 F. Supp. 3d 440 (D.R.I. 2025) .......... 28, 38

**Statutes**

5 U.S.C. § 703 .......... 18, 37, 38

5 U.S.C. § 704 .......... 20

5 U.S.C. § 705 .......... 18, 38

5 U.S.C. § 706 .......... 20, 21, 27, 28, 38

8 U.S.C. § 1101 .......... 7

8 U.S.C. § 1611 .......... 6-7

8 U.S.C. § 1612 .......... 7, 8, 10, 22, 23, 24, 26, 27, 29, 30

42 U.S.C. § 1320b-7 .......... 13

42 U.S.C. §§ 1381–1383f .......... 4

42 U.S.C. § 1382 .......... 4, 5, 10

42 U.S.C. § 1382c ........ 4
42 U.S.C. § 1383c ........ 5
42 U.S.C. § 1396 et seq. ........ 2
42 U.S.C. § 1396-1 ........ 2, 3, 4
42 U.S.C. § 1396a ........ 2, 3, 4, 5, 6, 10, 12, 23, 29, 30
42 U.S.C. § 1396b ........ 3, 9, 10, 27
42 U.S.C. § 1396d ........ 3, 22
Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 73, 78 ........ 18
Pub. L. No. 100-202, § 101(e), 101 Stat. 1329, 1329-183 (1987) ........ 7
Pub. L. No. 105-33, § 5305, 111 Stat. 251, 601 (1997) ........ 8
Pub. L. No. 110-181, § 1244(g), 122 Stat. 3, 396 (2008) ........ 7
Pub. L. No. 111-8, div. F, tit. VI, § 602(b)(8), 123 Stat. 524, 809 (2009) ........ 7
Pub. L. No. 111-118, § 8120(b), 123 Stat. 3409, 3457 (2009) ........ 7
Pub. L. No. 113-291, § 1227, 128 Stat. 3292, 3552 (2014) ........ 7
Pub. L. No. 117-43, div. C, § 2502(b)(1), 135 Stat. 377 (2021) ........ 7
Pub. L. No. 117-128, tit. IV, § 401, 136 Stat. 1211, 1218 ........ 7
Pub. L. No. 118-50, div. B, § 301, 138 Stat. 895, 913 (2024) ........ 7
Pub. L. No. 119-21, 139 Stat. 72, (2025) ........ 8-9, 10, 24, 25

**Rules**

Federal Rule of Civil Procedure 65 ........ 37

**Regulations**

20 C.F.R. Part 416 ........ 4
42 C.F.R. Part 430 ........ 4
42 C.F.R. § 435.4 ........ 5
42 C.F.R. § 435.120 ........ 5, 12
42 C.F.R. § 435.121. ........ 6
42 C.F.R. § 435.909(a)(1) ........ 5

**Other Authorities**

143 Cong. Rec. E1610 (1997) (statement of Rep. Skaggs)........................................ 7-8

143 Cong. Rec. S8493, S8496 (1997) (statement of Sen. McCain) .............................. 7

171 Cong. Rec. H3039, H3043 (daily ed. July 2, 2025) (statement of Rep. Scott)..... 25

171 Cong. Rec. H3039, H3044 (daily ed. July 2, 2025) (statement of Rep. Haridopolos)................................................................................................. 25-26

171 Cong. Rec. H3039, H3055 (daily ed. July 2, 2025) (statement of Rep. Foxx) ..... 26

July 2026 Medicaid & CHIP Enrollment Data Highlights, https://www.medicaid.gov/medicaid/program-information/medicaid-and-chip-enrollment-data/report-highlights (last visited Nov. 23, 2026)............................. 3

Soc. Sec. Admin., Program Operations Manual System (POMS), SI 01730.010, Determinations of Medicaid Eligibility, https://secure.ssa.gov/poms.nsf/lnx/0501730010 (last visited Nov. 23, 2026)........ 5

Soc. Sec. Admin., Program Operations Manual System (POMS), SI 01715.010, Medicaid and the Supplemental Security Income (SSI) Program, https://secure.ssa.gov/poms.nsf/lnx/0501715010 (last visited Nov. 23, 2026)........ 6

## INTRODUCTION

Plaintiffs and proposed class members are among the nation's most vulnerable individuals: impoverished elderly and disabled recipients of Supplemental Security Income (SSI)—who are classified as categorically needy and entitled to Medicaid coverage by Congress. Yet these individuals are now unable to afford the lifesaving medical care they need, because Defendants the United States Department of Health and Human Services (HHS) and Centers for Medicare & Medicaid Services (CMS) have cut off federal Medicaid funding for them, effectively terminating their Medicaid benefits, due to their immigration status.

Defendants' unlawful directive (the "SSI Medicaid Exclusion") is in direct contradiction of Congress's unambiguous statutory mandate to provide the same access to federally funded Medicaid to all SSI recipients, regardless of immigration status. Plaintiffs—lawfully present noncitizen SSI recipients and residents of Rhode Island, Illinois, Missouri, and South Carolina, as well as putative class members from across the nation—now bring this nationwide class action, challenging Defendants' unlawful directive under the Administrative Procedure Act (APA). As a direct result of Defendants' actions, Plaintiffs and thousands of similarly situated individuals are missing preventive care appointments, rationing medications, and cancelling surgeries, with no ability to otherwise pay for necessary medical care. Defendants have set a deadline of December 31, 2026, for states to memorialize this unlawful policy into their Medicaid State Plans.

Another district court in the Western District of Washington has already held that Defendants' SSI Medicaid Exclusion likely violates the APA and has preliminarily enjoined HHS from terminating Medicaid funding for any qualified noncitizen SSI recipient in Washington. *See Neighborhood House v. U.S. Dep't of Health & Hum. Servs.*, No. C26-3006-TSZ, 2026 WL 2935933 (W.D. Wash. Sept. 30, 2026). This Court should follow its lead, grant Plaintiffs preliminary relief and/or summary judgment, vacate and declare unlawful the SSI Medicaid Exclusion, enter an injunction prohibiting Defendants' implementation of the SSI Medicaid Exclusion, and order CMS to notify all states participating in Medicaid of the Court's order. Plaintiffs request relief by December 22—either final relief or, if the Court requires more time to fully consider summary judgment, preliminary relief—blocking Defendants from implementing the SSI Exclusion during the pendency of this case.

## FACTUAL AND LEGAL BACKGROUND

### I. Congress Establishes the Medicaid Program.

In 1965, through Title XIX of the Social Security Act, Congress established the medical assistance program known as Medicaid. 42 U.S.C. §§ 1396 *et seq*. The purpose of the Medicaid Act is to enable states "to furnish . . . medical assistance" to individuals "whose income and resources are insufficient to meet the costs of necessary medical services" and to provide "rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care." *Id.* § 1396-1. The Act defines "medical assistance" as "payment of part or all of the cost" of various health "care and services or the care and services themselves, or

both." *Id.* § 1396d(a). Medicaid provides coverage for medical services, such as inpatient and outpatient hospital care, prescriptions, and long-term care. *Id.* §§ 1396a(a)(10)(A), 1396d(a)(1)-(5), (12). The Medicaid program is implemented federally by HHS. Within HHS, CMS is responsible for administration of the Medicaid program. As of June 2026, nearly 66 million people were enrolled in Medicaid in the United States.[1]

States do not have to participate in Medicaid, but all do. States and the federal government share responsibility for funding Medicaid. Indeed, this joint funding structure is the "cornerstone of Medicaid." *Harris v. McRae*, 448 U.S. 297, 308 (1980). Section 1396b requires the Secretary to pay each participating state the federal share of "the total amount expended . . . as medical assistance under the State plan." 42 U.S.C. §§ 1396b(a)(1), 1396d(b). The federal payment rate is based on the state's relative per capita income and is called the Federal Medical Assistance Percentage. *Id.* § 1396d(b). Federal funding is also generally referred to as Federal Financial Participation (FFP). In return for federal funding, participating states must pay the remaining portion of the costs of care and follow all federal requirements, including those regarding the scope of coverage and eligibility for the program. 42 U.S.C. §§ 1396-1, 1396a(a)(10), 1396b.

Each participating state must maintain a comprehensive Medicaid "State plan," approved by the HHS Secretary, that describes what medical assistance will

---

[1] *See* July 2026 Medicaid & CHIP Enrollment Data Highlights, https://www.medicaid.gov/medicaid/program-information/medicaid-and-chip-enrollment-data/report-highlights (last visited Nov. 23, 2026).

be provided with state and federal funding and to whom. *Id.* §§ 1396-1, 1396a; 42 C.F.R. Part 430. The state Medicaid plan must describe the state's Medicaid program and affirm its commitment to comply with the requirements imposed by the Medicaid Act and its implementing regulations. While the Medicaid Act allows states some discretion to design each state plan, there are some mandatory obligations that all states must accept to receive federal funding. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 541-42 (2012) ("In order to receive that funding, States must comply with federal criteria governing matters such as who receives care and what services are provided at what cost.").

## II. Medicaid Eligibility for SSI Recipients

SSI, established under Title XVI of the Social Security Act, provides monthly cash assistance for aged, blind, or disabled individuals who have little or no income and resources, to help them meet their basic needs and maintain a minimum level of security. 42 U.S.C. §§ 1381–1383f; *see also* 20 C.F.R. Part 416. To be eligible for SSI, an individual must be over the age of sixty-five, blind, or "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A). In addition to being elderly, blind, or disabled, the individual must meet low-income restrictions and cannot have total resources that exceed $2,000 for a single person, or $3,000 for a married couple. *Id.* § 1382(a)(1)-(3).

Under federal law, SSI recipients are generally entitled to Medicaid. *Id.* § 1396a(a)(10)(A)(i)(II)(aa). The Medicaid Act describes SSI recipients as categorically needy and their coverage under Medicaid is mandatory. *Id.* § 1396a(a)(10)(A)(i)(I); *see also* 42 C.F.R. § 435.4; 42 C.F.R. § 435.120 ("[T]he [State Medicaid] agency must provide Medicaid to aged, blind, and disabled individuals who are receiving or are deemed to be receiving SSI."); *Himes v. Shalala*, 999 F.2d 684, 686 (2d Cir. 1993) ("The agency must provide Medicaid to aged, blind, and disabled individuals or couples who are receiving or deemed to be receiving SSI.").

To implement coverage for SSI recipients, the majority of states, including Rhode Island and South Carolina, rely on the Social Security Administration (SSA) to determine Medicaid eligibility. These states have entered into a "1634 agreement" (named for Section 1634 of the Social Security Act) with SSA to simultaneously determine SSI and Medicaid eligibility.[2] 42 U.S.C. § 1383c(a); *see* Soc. Sec. Admin., Program Operations Manual System (POMS), SI 01730.010, *Determinations of Medicaid Eligibility*, https://secure.ssa.gov/poms.nsf/lnx/0501730010 (last visited Nov. 23, 2026); *see also* 42 C.F.R. § 435.909(a)(1) (providing for "automatic enrollment" without requiring a separate application for state agencies with 1634 agreements). Eight states and the Commonwealth of the Northern Mariana Islands,

[2] Thirty-five states and the District of Columbia have 1634 agreements with the SSA: Alabama, Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Indiana, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Mississippi, Montana, New Jersey, New Mexico, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Vermont, Washington, West Virginia, Wisconsin, and Wyoming.

use the SSI eligibility criteria, but require individuals to submit separate Medicaid applications to the state Medicaid agency, rather than have SSA make the determination; these states are known as SSI Criteria.[3] *See* Soc. Sec. Admin., Program Operations Manual System (POMS), SI 01715.010, *Medicaid and the Supplemental Security Income (SSI) Program*, https://secure.ssa.gov/poms.nsf/lnx/0501715010 (last visited Nov. 23, 2026).

Eight other states, including Illinois and Missouri, have exercised what is referred to as the "209(b) option."[4] 42 U.S.C. § 1396a(f). Under the 209(b) option, states are permitted to apply more stringent financial or disability criteria to SSI recipients for Medicaid eligibility, so long as those criteria are no more restrictive than the Medicaid eligibility rules that were in place in January 1972. 42 U.S.C. § 1396a(f); 42 C.F.R. § 435.121. The 209(b) states must provide coverage to all applicants (including SSI recipients) who meet the state's more stringent eligibility criteria. *Id.* Notably, state flexibility under the 209(b) option does not extend to citizenship/immigration requirements, so these states—along with all others—must follow the mandated federal requirements. *Id.*

### III. PRWORA Requires the Same Eligibility for All SSI Recipients, Regardless of Immigration Status.

In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), which drastically narrowed which lawfully present

[3] SSI Criteria States: Alaska, Idaho, Kansas, Nebraska, Nevada, Oklahoma, Oregon, and Utah.

[4] The following eight states exercise the 209(b) option: Connecticut, Hawaii, Illinois, Minnesota, Missouri, New Hampshire, North Dakota, and Virginia.

noncitizens could be eligible for federal public benefits, including SSI and Medicaid. *See* 8 U.S.C. § 1611(a). Under PRWORA, only select categories of lawfully present noncitizens may access SSI, and for certain categories, such as refugees and asylees, SSI eligibility is time-limited. *See* 8 U.S.C. § 1612(a)(2). Subsequent legislation entitled Ukrainian parolees to the same public benefits as refugees, including time-limited SSI. *See* Additional Ukraine Supplemental Appropriations Act, 2022, Pub. L. No. 117-128, tit. IV, § 401, 136 Stat. 1211, 1218; Pub. L. No. 118-50, div. B, § 301, 138 Stat. 895, 913 (2024). So, too, for Afghan and Iraqi special immigrants, Pub. L. No. 110-181, § 1244(g), 122 Stat. 3, 396 (2008) (codified at 8 U.S.C. § 1101 note); Pub. L. No. 111-8, div. F, tit. IV, § 602(b)(8), 123 Stat. 524 (2009), Pub. L. No. 111-118, § 8120(b) (2009), and Pub. L. No. 113-291, § 1227 (2014) (codified at 8 U.S.C. § 1101 note), Amerasian immigrants, Pub. L. No. 100-202, § 101(e), 101 Stat. 1329, 1329-183 (1987) (codified at 8 U.S.C. § 1101 note), and Afghan parolees, Pub. L. No. 117-43, div. C, § 2502(b)(1), 135 Stat. 377 (2021) (codified at 8 U.S.C. § 1101 note).

Just one year after PRWORA passed, realizing that its Medicaid restrictions for noncitizens had gone too far, Congress amended the statute. Among several amendments, the 1997 legislation restored Medicaid for noncitizen SSI recipients in recognition of the "potentially disastrous impact [PRWORA] would have on children, the disabled, and elderly legal immigrants who would lose vital support services such as Medicaid and [SSI]." 143 Cong. Rec. S8493, S8496 (1997) (statement of Sen. McCain); *see also* 143 Cong. Rec. E1610 (1997) (statement of Rep. Skaggs) expressing support for the 1997 legislation because it "restores disability and Medicaid for legal

immigrants and . . . provides minimum benefits for refugees and asylees"). Congress took bipartisan action to establish specific Medicaid protection for noncitizens receiving SSI, mandating:

> An alien who is receiving benefits under the program defined in subsection (a)(3)(A) (relating to the supplemental security income program) **shall be eligible for medical assistance** under a State plan under title XIX of the Social Security Act (42 U.S.C. 1396 *et seq.*) **under the same terms and conditions** that apply to other recipients of benefits under the program defined in such subsection.

8 U.S.C. § 1612(b)(2)(F) (emphasis added); *see* Pub. L. 105-33, § 5305; 111 Stat 251, 601 (1997).

This amendment mandated that for purposes of receiving medical assistance, any noncitizen SSI recipients should be afforded "exactly the same treatment" as other SSI recipients who are citizens. *See Noland v. Shalala*, 12 F.3d 258, 261 (D.C. Cir. 1994) (interpreting the phrase "same terms and conditions"). Thus, pursuant to 8 U.S.C. § 1612(b)(2)(F), all noncitizen SSI recipients—regardless of their immigration status and regardless of the state in which they reside—must be provided the same access to Medicaid coverage as citizen SSI recipients in their state.

## IV. H.R. 1 Did Not Amend Medicaid Eligibility Requirements for Noncitizen SSI Recipients.

On July 4, 2025, Congress passed Public Law No. 119-21, also known as "H.R. 1."[5] H.R. 1 amended several provisions of the Medicaid Act, including eligibility criteria and redetermination requirements. Pub. L. No. 119-21, §§ 71107, 71108, 71119, 139 Stat. at 295–96, 306–07 (increasing eligibility redetermination frequency,

[5] This legislation is also referred to as the One Big Beautiful Bill Act (OBBBA) or the Working Families Tax Cut (WFTC) Legislation.

amending home equity limits, and adding "community engagement" standards). Section 71109 of H.R. 1 also amended the federal funding provision of the Medicaid Act, 42 U.S.C. § 1396b(v), to read as follows:

> Notwithstanding the preceding provisions of this section, except as provided in paragraphs (2), (4), **and (5),** no payment may be made to a State under this section for medical assistance furnished to an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law.

*See* 42 U.S.C. § 1396b(v)(1) (emphasis added to reflect revision) (as amended by Pub. L. No. 119-21, § 71109(a)(1), 139 Stat. at 297. Paragraph (5) provides, in relevant part, as follows:

> Notwithstanding the preceding paragraphs of this subsection, beginning on October 1, 2026, except as provided in paragraphs (2) and (4)[[6]], in no event shall payment be made to a State under this section for medical assistance furnished to an individual unless such individual is–
>
> . . .
>
> (i) a citizen or national of the United States;
>
> (ii) an alien lawfully admitted for permanent residence as an immigrant as defined by sections 1101(a)(15) and 1101(a)(20) of Title 8, excluding, among others, alien visitors, tourists, diplomats, and students who enter the United States temporarily with no intention of abandoning their residence in a foreign country;
>
> (iii) an alien who has been granted the status of Cuban and Haitian entrant, as defined in section 501(e) of the Refugee Education Assistance Act of 1980 (Public Law 96-422); or
>
> (iv) an individual who lawfully resides in the United States in accordance with a Compact of Free Association referred to in section 1612(b)(2)(G) of Title 8.

---

[6] These subparagraphs allow Medicaid funding for emergency care and lawfully present pregnant women and children.

42 U.S.C. § 1396b(v)(5).

H.R. 1 also expressly amended or repealed several prior enacted statutory provisions governing food assistance, Medicare, and premium tax credits for health insurance premiums. *See* Pub. L. No. 119-21, §§ 10108, 71201, 71301, 139 Stat. 72 (2025). However, it did not amend or repeal the SSI eligibility requirements under the Social Security Act, 42 U.S.C. § 1382, thus continuing to recognize certain categories of lawfully present noncitizens as eligible for SSI. *See* 8 U.S.C. § 1612(a)(2) (establishing eligibility for noncitizens including refugees, asylees, individuals granted withholding of removal, Cuban and Haitian entrants, and Amerasian immigrants). H.R. 1 also left the statutory scheme for providing Medicaid to noncitizen SSI recipients fully intact: nothing in H.R. 1 amended PRWORA's mandate in 8 U.S.C. § 1612(b)(2)(F) to provide Medicaid benefits to all SSI recipients in a state on the same terms, regardless of immigration status. Nor did H.R. 1 change the Medicaid eligibility provisions codified in 42 U.S.C. §§ 1396a(a)(10)(A), (f), which provide for medical assistance to "categorically needy" individuals, including aged, blind or disabled individuals who receive SSI. Thus, while H.R. 1 enacted funding limitations for many noncitizens who were previously receiving Medicaid, it left intact both statutory mandates—in the Medicaid Act and PRWORA—which, when read in tandem, require all noncitizen SSI recipients to be eligible for Medicaid on the same terms and conditions as all other SSI recipients.

## V. CMS Issues Instructions to States that Federal Medicaid Funding is No Longer Available for Certain Noncitizen SSI Recipients.

Citing H.R. 1, but without identifying what language in H.R. 1 demonstrated congressional intent to nullify the statutory mandates in the Medicaid Act and PRWORA, Defendants announced a sweeping cut of SSI recipients' life-sustaining Medicaid coverage, based on immigration status, through an April 8, 2026, letter to State Health Officials, July 31, 2026, Implementation Tool, and August 14, 2026, Technical Guide (collectively, SSI Medicaid Exclusion).

### A. SHO Letter

On April 8, 2026, Defendant CMS issued a letter to State Health Officials in every state (the "SHO Letter") regarding the implementation of H.R. 1 § 71109. Exhibit 1, Dkt. No. 1-1. The SHO Letter purported to explain the relationship between section 71109 of H.R. 1 and PRWORA. *Id.* at 6. It coined a new term: "FFP-eligible noncitizens," which it defined as those individuals who hold one of the three statuses listed in section 71109 of H.R.1 (i.e. Lawful Permanent Residents (LPR), Cuban/Haitian entrants, and Compact of Free Association (COFA) migrants). *Id.* at 4. The SHO Letter conceded that PRWORA requires states to provide full Medicaid benefits to certain qualified noncitizens and that H.R. 1 "did not amend the description in 8 U.S.C. § 1612(b)(2) of the populations to which states must provide full Medicaid benefits, nor did it amend the description or scope of the populations in [42 U.S.C. § 1396a] to which states are required to provide medical assistance (e.g., individuals to whom supplemental security income (SSI) benefits are being paid)." *Id.* at 6. Yet it excluded noncitizen SSI recipients with immigration statuses other than

one of those three statuses from the definition of "FFP-eligible" and instructed states to stop claiming FFP for them as of October 1, 2026, effectively terminating their Medicaid coverage. *Id.* at 4. Indeed, the SHO Letter states that beginning October 1, 2026, FFP "will not be available" for noncitizen SSI recipients who lack the immigration status listed in Section 71109.[7] *Id* at 7, 18. In the SHO Letter, HHS articulated plans to update its regulations to reflect its guidance and required all states to submit a State Plan Amendment no later than December 31, 2026, to be retroactively effective October 1, 2026.[8] *Id.* at 4, 20.

The SHO Letter further informs states that, absent FFP, they have no obligation to provide full Medicaid benefits to qualified noncitizens with state-only funding. *Id.* at 7. The SHO Letter acknowledges that H.R.1 "did not clearly and unambiguously alter the fundamental structure of the Medicaid program," which is "financial contribution by both the Federal Government and the participating State," and, thus HHS does not consider optional health coverage funded without FFP to be "Medicaid." *Id.*

---

[7] The Letter included a chart listing FFP eligible and ineligible statuses. That chart did not indicate any exceptions to the denial of FFP for SSI recipients who are refugees, asylees, individuals granted withholding of removal, Amerasian immigrants, certain abused spouses and children, Iraqi and Afghan special immigrants, human trafficking victims, and certain Afghan and Ukrainian parolees. *Id.* at 24–27.

[8] To date, 45 C.F.R. § 435.120, which mandates Medicaid coverage for individuals receiving SSI, has not been amended or repealed.

**B. CMS State Implementation Tool**

On July 31, 2026, CMS issued a "State Implementation Tool: Section 71109 of the Working Families Tax Cut (WFTC) Legislation." Implementation Tool, Exhibit 2, Dkt. No. 1-2. The Implementation Tool repeats the SHO Letter's definition of "FFP-eligible noncitizen." *Id.* at 1, 8. The Implementation Tool also redefines the term "satisfactory immigration status" to refer to "noncitizens for whom states can receive FFP for full Medicaid . . . : LPRs, Cuban/Haitian entrants, and COFA migrants . . . ." *Id.* at 8; *cf.* 42 U.S.C. § 1320b-7(d)(1)(B)(iii) (defining "satisfactory immigration status" without referencing a requirement to be an LPR, Cuban or Haitian entrant, or COFA resident).

The Implementation Tool does not recognize any exception for SSI recipients. Rather, it provides explicit instructions to states for removing them from the Medicaid program if they are not LPRs, Cuban/Haitian entrants, or COFA migrants. The Implementation Tool instructs states to identify individuals "potentially affected" by Section 71109 of H.R. 1, which include those "who are Supplemental Security Income (SSI) recipients." Ex. 2 at 2. It further instructs 1634 states—who rely on SSA's Medicaid eligibility determinations—to "ensure systems are programmed to consume SSA data that identifies SSI recipients who are FFP-eligible noncitizens and, if applicable, accurately determine eligibility for SSI noncitizen recipients." *Id.* at 4. The Implementation Tool cautions that if states cannot ensure their claiming practices comply with HHS' interpretation of H.R. 1, "the state must

not submit FFP claims for potentially affected beneficiaries until the state completes all of the necessary actions." *Id.* at 7.

### C. CMS Technical Guide

On August 14, 2026, CMS issued further guidance, a "Technical Guide: Implementation of Section 71109 of Working Families Tax Cut (WFTC) Legislation and Supplemental Security Income (SSI) Recipients." Technical Guide, Exhibit 3, Dkt. No. 1-3. Like the SHO Letter and the Implementation Tool, the Technical Guide again asserts that CMS need only provide FFP for LPRs, Cuban/Haitian entrants, and COFA migrants and asserts that states must alter their eligibility processes and systems to avoid claiming FFP for other noncitizens, even those receiving SSI. *Id.* at 1. In the Technical Guide, CMS requires states to "make any and all necessary changes to ensure proper FFP claiming in accordance with section 1903(v)(5) of this Act" which "includes potentially affected beneficiaries who are SSI recipients." *Id.* at 3. The Technical Guide requires states to determine Medicaid eligibility for SSI recipients and to verify immigration status to "identify potentially affected beneficiaries" for termination of benefits. *Id.* at 3–5.

## VI. Plaintiffs File this Nationwide Class Action to Redress Severe Harms Caused by the Challenged Policies.

The named Plaintiffs are all lawfully present noncitizens who receive SSI; had previously been found eligible for Medicaid, under the State Plan where they reside; and have been terminated from Medicaid in their respective states, effective October 1, 2026, pursuant to Defendants' SSI Medicaid Exclusion. They all continue to receive SSI benefits, but no longer have access to vital Medicaid coverage, including for

medications, doctors' visits, specialists, surgeries, and in-home care for activities of daily living.

### A. Plaintiff Atahir Mahmoud

Plaintiff Atahir Wadalfhakih Mahmoud is a 69-year-old man living in Providence, Rhode Island with his wife and two minor children. Declaration of Atahir Mahmoud (Mahmoud Decl.), Dkt No. 1-4, ¶¶ 3, 6. He was born in Sudan and arrived in the United States as a refugee in February 2024. *Id.* ¶¶ 3-4. He currently has status as a refugee, and his application for his green card is pending. *Id.* ¶¶ 4-5. He qualifies for and receives SSI payments. *Id.* ¶ 7. Until October 1, 2026, he relied on Medicaid benefits in Rhode Island for medical care, including medication, for a range of health issues, including knee pain, type 2 diabetes, high blood pressure, high cholesterol, and prostate and stomach pain. *Id.* ¶¶ 8, 12, 14. He lost Medicaid benefits, effective October 1, 2026, pursuant to Defendants' SSI Medicaid Exclusion, causing him substantial and irreparable harm. *Id.* ¶¶ 8, 11-19.

### B. Plaintiff Gerard Mayetela

Plaintiff Gerard Mayetela is a 77-year-old man living in Providence, Rhode Island, with his wife and adult son. Declaration of Gerard Mayetela (Mayatela Decl.), Dkt. No. 1-5, ¶¶ 3, 6. He and his family fled to the United States from the Republic of the Congo as refugees in 2024. *Id.* ¶ 4. He currently has status as a refugee, and his application for his green card is pending. *Id.* ¶¶ 4-5. He qualifies for and receives SSI payments. *Id.* ¶ 7. Until October 1, 2026, he relied on Medicaid benefits in Rhode Island for medical care, including medications, for a range of health issues, including vision impairments and high blood pressure. *Id.* ¶¶ 8, 12-13. He lost Medicaid

benefits, effective October 1, 2026, pursuant to Defendants' SSI Medicaid Exclusion, causing him substantial and irreparable harm. *Id.* ¶¶ 8, 11-18.

**C. Plaintiff Lyubov Kodentsova**

Lyubov Kodentsova is an 89-year-old, Uzbekistani woman living in Champaign, Illinois with her adult daughter, Valentina Chupik. Declaration of Lyubov Kodentsova, Dkt. No. 1-6, (hereinafter "Kodentsova Decl."), ¶ 2. Ms. Kodentsova was granted asylum in the United States in 2023, and currently has status as an asylee. *Id.* ¶ 9. She qualifies for and receives SSI benefits. *Id.* ¶ 9. Until October 1, 2026, she relied on Medicaid benefits in Illinois for medical care, including medications, for a range of health issues, including chronic heart failure, bradycardia, shortness of breath, osteoporosis, and dementia. *Id.* ¶¶ 10-15. Her Medicaid also paid Valentina to provide support with Ms. Kodentsova's activities of daily living, including eating, bathing, dressing, transferring in and out of bed, and taking medications. *Id.* ¶¶ 16-18. She lost Medicaid benefits effective October 1, 2026, pursuant to Defendants' SSI Medicaid Exclusion and is experiencing significant and irreparable harm. *Id.* ¶¶ 18-23.

**D. Plaintiff Svitlana Pecherskykh**

Svitlana Pecherskykh is a 78-eight-year-old woman who lives in Boiling Springs, South Carolina. Declaration of Tetiana Samoilova, Dkt. No. 1-7, (hereinafter "Samoilova Decl.") ¶ 2. She and her family fled the war in Ukraine and entered the United States as humanitarian parolees through the United for Ukraine (U4U) program. *Id.* ¶¶ 3-5, 9. She receives SSI based on her age. *Id.* ¶ 11. Two of her family members, her son-in-law, and grandson receive SSI due to their disabilities. *Id.* ¶ 24.

All three family members received notices that their Medicaid would end on October 1, 2026 due to their immigration status. *Id.* ¶¶ 15, 26. Moreover, Ms. Pecherskykh's daughter participates in a Russian-speaking group for parents of children with disabilities and knows of five or six other individuals in their county who have also lost Medicaid coverage due to the SSI Medicaid Exclusion. *Id.* ¶ 29. The loss of Medicaid coverage is causing substantial and irreparable harm to Ms. Pecherskykh and her family. For her part, Ms. Pecherskykh is foregoing infusion treatment for her Alzheimer's and multiple medications needed to treat her other conditions, including type 2 diabetes, reflux, and urinary incontinence. *Id.* ¶ 17–19. She has also lost the in-home assistance with activities of daily living that was covered by Medicaid. *Id.* ¶ 20. This has left her daughter Tetiana to serve as the primary caretaker for three adults with disabilities in one household: her mother who has Alzheimer's, her husband with dementia, and her son with an intellectual disability. *Id.* ¶ 27. She cannot safely leave them alone and she is experiencing profound exhaustion, loss of sleep, and emotional burnout. *Id.* ¶ 28.

**E. Plaintiff M.E.**

M.E. is an 11-year-old child who lives in Saint Louis, Missouri, with his family. Declaration of Sara Hamdi (Hamdi Decl.), Dkt. 1-8, ¶¶ 3, 7. His parents fled from Syria to Turkey in 2015 because of the civil war. *Id.* ¶ 4. He and his three younger siblings were born in Turkey, and they came to the United States in December 2024 after they were granted refugee status. *Id.* ¶¶ 4-5. M.E. receives SSI based on his disabilities. *Id.* ¶ 10. He and his family received notices that their Medicaid would

end on October 1, 2026, due to their immigration status. *Id.* ¶¶ 15-16. There was no exception for M.E., even though he receives SSI benefits. *Id.* ¶ 16. The loss of Medicaid coverage is causing substantial and irreparable harm to M.E. and his family. M.E. was born with kidney malformation and congenital malformations of his genitals, and has had multiple surgeries and requires more surgeries. *Id.* ¶¶ 7-8, 13-14. His family had to put off the next surgery because they cannot afford the cost without Medicaid. *Id.* ¶ 21. M.E. also has been diagnosed with global developmental delay, enuresis, and encopresis. *Id.* ¶ 7. Medicaid covered the cost of his doctors' visits, including for a urologist, gastroenterologist, geneticist, and psychiatrist, as well as his prescription medications and diapers. *Id.* ¶¶ 12. Without Medicaid, he is unable to be treated, as his family cannot afford his medical care. *Id.* ¶¶ 20, 22.

## LEGAL STANDARD

***Preliminary relief***. The APA authorizes courts to "issue all necessary and appropriate process to preserve status or rights pending resolution of the proceedings" when "necessary to prevent irreparable injury." 5 U.S.C. § 705. Courts also have equitable authority to grant a preliminary injunction. *See* Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 73, 78; 5 U.S.C. § 703. The same standards apply to both types of preliminary relief. *R.I. Coal. Against Domestic Violence v. Bondi*, 794 F. Supp. 3d 58, 65 (D.R.I. 2025). To obtain preliminary relief of either type, the movant must establish (1) "a likelihood of success on the merits," (2) likely "irreparable harm . . . absen[t] preliminary relief," (3) that "the balance of equities tips in [the movant's] favor," and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def.*

*Council, Inc.*, 555 U.S. 7, 20 (2008). Where "the [g]overnment is the opposing party," the final two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

***Summary judgment***. Summary judgment is "appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Viscito v. Nat'l Plan. Corp.*, 34 F.4th 78, 83 (1st Cir. 2022) (internal quotation marks omitted). However, "the summary judgment rubric has a 'special twist in the administrative law context.'" *Bos. Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016) (quoting *Assoc. Fisheries of Me., Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997)). For APA claims, "a motion for summary judgment is simply a vehicle to tee up a case for judicial review and, thus, an inquiring court must review an agency action not to determine whether a dispute of fact remains but, rather, to determine whether the agency action" violates the APA.[9] *Id.*

## ARGUMENT

### I. Plaintiffs Are Likely to Succeed on the Merits of Their Claims (and Are Entitled to Summary Judgment).

Defendants' directive to exclude SSI recipients from Medicaid eligibility, based on immigration status, violates the APA. Plaintiffs are likely to prevail on their claims.

[9] Plaintiffs request that the Court waive the requirement to file Statements of Undisputed and Disputed Facts under LR Cv. 56(a).

### A. The SSI Medicaid Exclusion Violates the APA.

Defendants' SSI Medicaid Exclusion is reviewable "final agency action" that violates the APA in two separate ways: it is "not in accordance with law," and "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. §§ 706(2)(A), (C).

#### 1. The SSI Medicaid Exclusion is a Final Agency Action.

Defendants' SSI Medicaid Exclusion is a final agency action reviewable under the APA. 5 U.S.C. § 704. The "APA establishes a basic presumption of judicial review for one suffering legal wrong because of agency action." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (citation modified). For agency action to be "final," it must (1) "mark the 'consummation' of the agency's decisionmaking process" and (2) "be one by which 'rights or obligations have been determined, or from which 'legal consequences will flow.'" *Harper v. Werfel*, 118 F.4th 100, 116 (1st Cir. 2024) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997)).

First, the SSI Medicaid Exclusion marks the consummation of HHS and CMS' decisionmaking. The SSI Medicaid Exclusion has been announced three times over—through the issuance of the (a) April 8, 2026, SHO Letter, (b) July 31, 2026, Implementation Tool and (c) August 14, 2026 Technical Guide—and implementation of the policy is underway. Defendants have made a final decision to exclude noncitizen SSI recipients—who are not an LPR, Cuban or Haitian entrant, or COFA migrant—from federally funded Medicaid benefits. Moreover, the SSI Medicaid Exclusion was effective as of October 1, 2026 and the policy will remain in effect indefinitely until and unless it is formally rescinded by HHS and CMS. Defendants' decisionmaking

process has thus come to an end and the first prong of the final agency action test is satisfied.

Second, the SSI Medicaid Exclusion determines rights and obligations and is a decision from which legal consequences flow. That is because the SSI Medicaid Exclusion "altered the legal status quo" under which certain noncitizen SSI recipients are eligible for federally funded Medicaid benefits, as of October 1, 2026. *New York v. Trump*, 811 F. Supp. 3d 215, 233 (D. Mass. 2025) (quoting *Glob. Tower Assets, LLC v. Town of Rome*, 810 F.3d 77, 84 (1st Cir. 2016)). Defendants' SHO Letter, Implementation Tool, and Guidance leave no question that starting on October 1, 2026, all states must not claim FFP for noncitizen SSI recipients who do not fall under one of the three H.R. 1 categories. It is therefore no surprise that, in a recent case challenging the SSI Medicaid Exclusion, the government did "not dispute that the SHO Letter and State Implementation Tool constitute final agency action for purposes of seeking judicial review under the APA." *Neighborhood House*, 2026 WL 2935933, at *2 n.5.

**2. The SSI Medicaid Exclusion is Contrary to Law and Exceeds Defendants' Statutory Authority.**

The SSI Medicaid Exclusion outright conflicts with statutory mandates to provide Medicaid to all noncitizen SSI recipients on the same terms as apply to other (citizen) SSI recipients and therefore must be set aside as contrary to law. *See* 5 U.S.C. § 706(2)(A). Moreover, because no statute grants Defendants the authority to exclude noncitizen SSI recipients from Medicaid benefits, it is also in excess of statutory authority. *See* 5 U.S.C. § 706(2)(C). *La. Pub. Serv. Comm'n v. FCC*, 476

U.S. 355, 374 (1986) (explaining that an agency "literally has no power to act . . . unless and until Congress confers power upon it."); *see also City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020) ("Any action that an agency takes outside the bounds of its statutory authority . . . violates the Administrative Procedure Act." (cleaned up)).

Here, Defendants' SSI Medicaid Exclusion is contrary to PRWORA's statutory mandate that noncitizen SSI recipients "**shall** be eligible for **medical assistance** . . . under the same terms and conditions" as other SSI recipients. 8 U.S.C. § 1612(b)(2)(F) (emphasis added). The term "'medical assistance' is a statutory term of art," a "key element[]" of which is "federal funds." *Univ. of Wash. Med. Ctr. v. Sebelius*, 634 F.3d 1029, 1034 (9th Cir. 2011); *see also Bruns v. Mayhew*, 750 F.3d 61, 67 (1st Cir. 2014) (noting that PRWORA "shifted the landscape of Medicaid **funding**") (emphasis added). Indeed, the Medicaid Act defines the rate of federal contributions as the "federal **medical assistance** percentage." 42 U.S.C. § 1396d(b) (emphasis added). As the Supreme Court has held and as HHS echoed in its SHO Letter, the "cornerstone of Medicaid is financial contribution by both the Federal Government and the participating State." *Harris*, 448 U.S. at 308; Ex. 1 at 7.

Thus, the use of the word "shall" in 8 U.S.C. § 1612(b)(2)(F) creates an obligation by the federal government to provide states with federal funds for all SSI recipients who meet the categorical eligibility requirements for Medicaid in their state, regardless of immigration status. *See Maine Cmty. Health Options v. United States*, 590 U.S. 296, 313 (2020) (holding that "budget authority is not necessary for

Congress itself to create an obligation by statute.") In *Maine Community Health Options*, the Supreme Court determined that the plain terms of a prior-enacted statutory provision using mandatory "shall pay" language "created an obligation neither contingent on nor limited by the availability of appropriations or other funds." *Id*. at 314. Similarly, PRWORA uses mandatory "shall" language to require that noncitizens receive "medical assistance" (which includes federal funds). No language in 8 U.S.C. § 1612(b)(2)(F) makes this obligation to provide medical assistance to noncitizen SSI recipients subject to discretionary agency decision making, nor does it make it subject to appropriations.

In the SHO Letter and subsequent Implementation Tool and Guide, Defendants invoke H.R. 1 as the basis for excluding noncitizen SSI recipients from federally funded Medicaid coverage. But H.R. 1 does not change these obligations and, as a recent decision from another district court has found, CMS's interpretation is contrary to law. *Neighborhood House*, 2026 WL 2935933 at *6.

As CMS acknowledges in the SHO Letter, H.R. 1 did not expressly repeal—or amend—PRWORA's equal coverage mandate under 8 U.S.C. § 1612(b)(2)(F). Ex. 1 at 6. Nor did H.R. 1 modify or repeal the underlying SSI recipient coverage mandates in 42 U.S.C. §§ 1396a(a)(10)(A)(i)(II)(aa), (f). Nevertheless, in the SHO Letter, CMS read Section 71109 of H.R. 1 to completely nullify PRWORA's requirement in 8 U.S.C. § 1612(b)(2)(F). That reading cannot stand. Courts have long disfavored repeals by implication. *See Morton v. Mancari*, 417 U.S. 535, 549 (1974); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976); *United States v. Lahey Clinic Hosp., Inc.*, 399

F.3d 1, 9 (1st Cir. 2005) ("Repeal of a federal statute by implication is disfavored" and that the "intention of Congress to repeal must be clear and manifest"). They are a "rarity," *Maine Cmty. Health Options*, 590 U.S. at 315, and a party seeking to show that one statute displaces another bears a "heavy burden," *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (internal quote omitted). "Presented with two statutes, the Court will 'regard each as effective'—unless Congress' intention to repeal is 'clear and manifest' or the two laws are 'irreconcilable.'" *Maine Cmty. Health Options*, 590 U.S. at 315 (quoting *Morton*, 417 U.S. at 550–51); *see also Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007) (noting courts do not infer intent to repeal "unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all" (internal citation omitted)). Neither of these conditions is satisfied here.

First, there is no "clear and manifest" intent to reverse the 30-year policy enshrined in 8 U.S.C. § 1612(b)(2)(F) for states and the federal government to cooperatively provide healthcare benefits to noncitizen SSI recipients. As described above, H.R. 1 left all the relevant provisions governing both SSI eligibility and Medicaid eligibility for SSI recipients untouched. In contrast, Congress specifically amended the relevant provisions of SNAP, Medicare, and health insurance premium tax credits. *See* § 10108 (explicitly amending the Food and Nutrition Act of 2008 with regard to eligibility criteria); § 71201 (revising Title XVIII of the Social Security Act with regards to eligibility for Medicare); § 71301 (expressly altering the definition of

"lawfully present" with regards to health care insurance premium tax credit authorized in the Internal Revenue Code). It also amended *other* eligibility requirements for Medicaid §§ 71107, 71108, 71119, 139 Stat. at 295–96, 306–07 (increasing eligibility redetermination frequency, amending home equity limits, and adding "community engagement" standards). H.R. 1 uses some form of the term "amend" 912 times, and some form of the term "repeal" 39 times. *See generally* Pub. L. 119-21. PRWORA is mentioned five times, but never for the purpose of amending or repealing any of its provisions.[10] *Neighborhood House*, 2026 WL 2935933 at *6. The remainder of H.R. 1, thus, confirms that "Congress knows how to amend statutes to retract public benefits . . . when it wishes to do so[,]" but it "did not" do so with respect to Medicaid eligibility for noncitizen SSI recipients. *Id.* In fact, CMS has already conceded as much in its SHO Letter, recognizing that Congress did not repeal PRWORA and that it is "still" binding law. *See* Ex. 1 at 6-7.

The legislative history of H.R. 1 further undermines any "clear and manifest" intent to repeal. In fact, it reinforces that Congress intended to preserve coverage. On July 2, 2025—two days before H.R. 1 was enacted—Representative Scott declared in support of the bill: "When the Democrats are telling you that . . . we are kicking disabled people off of Medicaid, it is an absolute lie." 171 Cong. Rec. H3039, H3043 (daily ed. July 2, 2025) (statement of Rep. [Austin] Scott). And Representative

---

[10] *See* Pub. L. No. 119-21, §§ 10108, 71109, 71201, and 71301, 139 Stat. 72, 85, 297, 319, and 321-22 (2025) (citing PRWORA as a reference for the term "Compact of Free Association"), and Pub. L. No. 119-21 § 100054, 139 Stat. at 390 (regarding appropriation of funding to the Department of Justice to fund various efforts, including violations or fraud relating to title IV of PRWORA).

Haridopolos reassured fellow congressmembers: "Seniors in nursing homes are unaffected. People who are disabled are unaffected." *Id.* at H3044 (statement of Rep. Haridopolos). Representative Foxx explained, "[t]he One Big Beautiful Bill Act removes *illegal* aliens, enforces work requirements, and protects Medicaid for the truly vulnerable." *Id.* at H3055 (statement of Rep. Foxx) (emphasis added). Congress's choice not to amend these statutes must be respected.

Second, a construction of H.R. 1 to implicitly repeal PRWORA's equal coverage mandate is not "absolutely necessary." *Nat'l Ass'n of Home Builders*, 551 U.S. at 662. It is true that H.R. 1 generally restricts "medical assistance" for many immigrants, but it did not repeal PRWORA's more specific mandate that noncitizen SSI recipients "**shall** be eligible for **medical assistance**" on the same terms as other SSI recipients. As the Supreme Court has explained, when "a general . . . prohibition is contradicted by a specific . . . permission[,] [t]o eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012); *see also Radzanower*, 426 U.S. at 153 (holding that a prior-enacted "statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum").

Here, PRWORA easily prevails as the most specific federal statute on the issue of Medicaid coverage for noncitizens receiving SSI, setting forth a distinct and specific mandate that all SSI recipients are to receive Medicaid on the same terms, regardless of immigration status. 8 U.S.C. § 1612(b)(2)(F). H.R. 1's general restriction on federal

funding for certain immigrants thus yields to PRWORA's much more explicit and specific authorization, reconciling the statutes. *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017) (finding statute's "general prohibition . . . yields more to the specific authorization"). On the other hand, construing H.R. 1 to eliminate Medicaid for SSI recipients who are not citizens, LPRs, Cuban or Haitian entrants, or COFA migrants, completely nullifies 8 U.S.C. § 1612(b)(2)(f). By contrast, construing 8 U.S.C. § 1612(b)(2)(F) as a narrow exception to 42 U.S.C. § 1396b(v)(5) would still give Section 71109 of H.R. 1 considerable consequential effect: stripping Medicaid coverage from individuals who are refugees, asylees, parolees, trafficking victims, or who hold other humanitarian statuses, if they are *not* receiving SSI. See Hamdi Decl. ¶¶ 3, 16 (in addition to M.E., an 11-year-old SSI recipient, losing Medicaid, his five other refugee family members also lost Medicaid because of their immigration status). Because the "two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective." *Morton*, 417 U.S. at 552. Defendants' interpretation is contrary to law under 5 U.S.C. § 706(2)(A).

Likewise, absent statutory direction, HHS is not authorized to create "additional criterion" for Medicaid eligibility or to alter PRWORA's prior "statutory command." *See Nat'l Ass'n of Home Builders,* 551 U.S. at 663 (disallowing interpretation of later enacted statute to "engraft" criterion that "raises the floor" for when a federal agency was required to issue a permit because the former "statutory command" had not been repealed). Because no statute authorizes Defendants to exclude noncitizen SSI recipients from Medicaid, the SSI Medicaid Exclusion must

be set aside as exceeding Defendants' statutory authority. 5 U.S.C. § 706(2)(C); *see Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440, 472 (D.R.I. 2025) ("It is well-established that an agency 'literally has no power to act . . . unless and until Congress authorizes it to do so by statute.'") (quoting *FEC v. Cruz*, 596 U.S. 289, 301 (2022)), *aff'd in part, vacated in part,* 186 F.4th 25 (1st Cir. 2026).

## II. Plaintiffs' Requested Relief

To remedy the SSI Medicaid Exclusion's unlawfulness, the Court should (1) vacate and set aside Defendants' SSI Medicaid Exclusion under the APA; (2) declare that Defendants' SSI Medicaid Exclusion is unlawful because the Medicaid Act and PRWORA mandate that all SSI recipients who meet the categorical eligibility requirements for Medicaid in their state are entitled to federally funded Medicaid benefits regardless of their immigration status; (3) issue an injunction prohibiting Defendants from implementing the SSI Medicaid Exclusion, including prohibiting Defendants from denying, withholding, or disallowing FFP for medical assistance furnished to class members on the basis of the SSI Medicaid Exclusion; and (4) order Defendants, within 48 hours of this Court's order, to file a notice confirming that they have informed all states participating in Medicaid of the Court's order.

### A. The Court Should Vacate the SSI Medicaid Exclusion.

The Court should vacate and set aside the SSI Medicaid Exclusion pursuant to 5 U.S.C. § 706(2). The APA directs courts to "set aside agency action" when the court determines the action is "not in accordance with law" or "in excess of statutory . . . authority." 5 U.S.C. § 706(2)(A), (C). "[T]he text and history of the APA, [and] the

longstanding and settled precedent adhering to that text and history," make clear that to "set aside" an unlawful agency action means to "vacat[e]" that action. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 829 (2024) (Kavanaugh, J., concurring).

Vacatur is warranted. The "normal remedy for a successful APA challenge is vacatur of the rule and its applicability to all those who would have been subject to it." *Ass'n of Am. Univs. v. Nat'l Sci. Found.*, 788 F. Supp. 3d 106, 139 (D. Mass. 2025) (quoting *Massachusetts v. Nat'l Inst. Health*, 770 F. Supp. 3d 277, 329 (D. Mass. 2025)). APA vacatur is the appropriate remedy here because, for the reasons described above, the SSI Medicaid Exclusion is contrary to law and in excess of statutory authority.

### B. The Court Should Declare that the SSI Medicaid Exclusion is Unlawful Because the Medicaid Act and PRWORA Mandate that All SSI recipients (Who Meet the State Categorical Eligibility Requirements) Are Entitled to Medicaid, Regardless of Immigration Status.

Where, as here, plaintiffs establish that agency action is "unlawful, declaratory relief is clearly warranted." *Illinois v. Noem*, 813 F. Supp. 3d 282, 309 (D.R.I. 2025), appeal docketed, No. 26-1182. In addition to vacating the SSI Medicaid Exclusion, the Court should also declare that the SSI Medicaid Exclusion is unlawful and that, under the Medicaid Act, 42 U.S.C. § 1396a(a)(10)(A)(i)(II)(aa), (f), and PRWORA, 8 U.S.C. § 1612(b)(2)(F), all SSI recipients, who meet the categorical eligibility requirements in their states, are entitled to federally funded Medicaid benefits, regardless of immigration status.

### C. The Court Should Issue an Injunction Prohibiting Defendants from Implementing the SSI Medicaid Exclusion and Ordering Defendants to Notify All States Participating in Medicaid of the Court's Order.

To ensure that Plaintiffs and their class receive complete relief and that Defendants do not continue to unlawfully deny FFP to states for noncitizen SSI recipients, this Court should permanently (or in the alternative, preliminarily) enjoin Defendants from implementing the SSI Medicaid Exclusion, including prohibiting Defendants from denying, withholding, or disallowing FFP for medical assistance furnished to class members on the basis of the SSI Medicaid Exclusion. The Court should also order Defendants, within 48 hours of entry of the Court's order, to file a notice confirming that they have informed all states participating in Medicaid of the Court's order.

The issuance of a permanent injunction is appropriate where: "(1) plaintiffs prevail on the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief (i.e., an injury for which there is no adequate remedy at law); (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction."[11] *Ortiz-Bonilla v. Federacion de Ajedrez de P.R., Inc.*, 734 F.3d 28, 40 (1st Cir. 2013) (cleaned up). In an APA case, an injunction is warranted when it

[11] The standard for a permanent and preliminary injunction "is virtually identical" except that for preliminary injunctive relief actual success on the merits is not required, only the "likelihood of such success." *Largess v. Supreme Jud. Ct. for State of Mass.* 373 F.3d 219, 224 (1st Cir. 2004).

would have "meaningful practical effect independent of" vacatur of the challenged agency action. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Plaintiffs prevail on the merits for the reasons explained above, and Plaintiffs also readily satisfy the remaining prongs of the test.

**1. Plaintiffs and the class are suffering irreparable harm.**

Plaintiffs have suffered and will imminently suffer a panoply of irreparable harms. Plaintiffs had all been relying on Medicaid to provide comprehensive health coverage, including coverage for medications, doctors' visits, specialists, surgeries, and in-home care for activities of daily living. Now that their federally funded Medicaid benefits have been terminated, due to Defendants' unlawful SSI Medicaid Exclusion, they have lost access to vital health and long-term care services, creating significant threats to their health and wellbeing, which cannot be remedied later, and are also jeopardizing their limited resources.

Plaintiff Atahir Mahmoud recently skipped an appointment with a doctor to treat his severe knee pain because it would have cost him $985.65, leaving him with no money to pay for rent, utilities, food, or other monthly expenses. Mahmoud Decl. ¶ 12. He takes 12 medications to manage several health conditions including type 2 diabetes, high blood pressure, high cholesterol and prostate and stomach pain. *Id.* ¶ 14. Although he has switched to generic forms of his medication, the medications are still too expensive and he has started rationing several, including those that treat his knee and prostate pain. *Id.* ¶ 17.

Plaintiff Gerard Mayetela has an ongoing, but undiagnosed vision problem. Mayetela Decl. ¶ 13. After his Medicaid ended, he had to cancel an appointment with an optometrist scheduled for October 14, 2026, because he could not afford the $150 cost without Medicaid. *Id.* He still cannot see a doctor and worries that if his vision problem remains undiagnosed and untreated he could go blind. *Id.* ¶ 17. He has high blood pressure, which requires daily medication, but he is now rationing and taking only two to three tablets per week, instead of daily, because he cannot afford the daily prescription. *Id.* ¶ 12.

Plaintiff Svitlana Pecherskykh cannot afford infusions to treat her Alzheimer's and her family is currently rationing her medications and purchasing only the most critical. Samoilova Decl. ¶¶ 16-18. Although the family has tried to obtain free and low-cost care to maintain her Alzheimer's treatment, they recently incurred a $372 bill for a visit to a neurologist, which is causing significant financial strain. *Id.* ¶ 19. Ms. Pecherskykh has also lost the 80-hours a month of in-home care she was previously receiving through Medicaid and must now rely on her daughter Tetiana to provide this care. *Id.* ¶ 20. This puts Ms. Pecherskykh at increased risk of fall or injury because, despite Tetiana's best efforts, she must also provide around-the-clock supervision to two other family members with significant disabilities; her husband who has severe dementia and her son Andrii who has intellectual disabilities, who also receive SSI and are subject to Defendant's SSI Medicaid Exclusion. *Id.* ¶¶ 24, 26–28. Because of her family's significant needs she cannot maintain regular employment, and the family is under financial strain. *Id.* ¶ 27.

Plaintiff Lyobov Kodentsova is foregoing monitoring and testing to monitor her heart because of the cost, even though she has chronic heart failure and has been prescribed monitoring every three months. Kodentsova Decl. ¶¶ 13, 15, 21. Her daughter has made efforts to obtain lower-cost drugs, but they may soon be unable to afford Ms. Kodentsova's blood pressure medication. *Id.* ¶ 19. Without that medication she will be at increased risk of blood clots and stroke, which could be fatal. *Id.* To afford her medications, her daughter may have to start working out of the home, leaving her at risk of falling and unable to prepare meals, eat, or go to the bathroom while she is away. *Id.* ¶ 22.

Plaintiff M.E. is an 11-year-old child who needs surgery for incontinence, due to congenital malformation of genitalia. Hamdi Decl. ¶¶ 8, 9, 14. His family has had to put off the surgery, because they cannot afford the cost, now that his Medicaid has been terminated. *Id.* ¶ 21. He also has diagnoses of global developmental delay, enuresis and encropresis, as well as kidney malformation. *Id.* ¶ 7. His family relied on Medicaid coverage to pay for M.E.'s diapers and doctors' visits, including for a urologist, gastroenterologist, geneticist, and psychiatrist, as well as for prescription medications. *Id.* ¶ 12. Now they are no longer able to afford the cost of his medical care, and paying for his diapers will make it harder for them to pay for the clothes and medical care of M.E.'s three younger siblings as well. *Id.* ¶¶ 22-25.

These circumstances are not unique to the named Plaintiffs. Declarant Lubov Uminski runs an Adult Day Care Center in Philadelphia, Pennsylvania. Declaration of Lubov Uminski, Dkt. No. 1-9, ¶ 2. She has 32 clients who are SSI recipients whose

Medicaid has been terminated due to Defendants' SSI Medicaid Exclusion and are now at profound risk of harm. *Id.* ¶ 7. She states that her clients are at risk of experiencing falls, which could result in serious injury, especially if no one is present to provide assistance or seek medical care. *Id.* ¶ 11. These clients have also lost access to the emergency response service that would allow them to more quickly notify 911. *Id.* Without the Center's regular monitoring of their ongoing and chronic health conditions, their symptoms may worsen or increase. *Id.* ¶¶ 9-11. Several are also experiencing social isolation, which can result in significant physical, mental, and cognitive risks. In fact, one client has already expressed suicidal ideation after learning her services were ending. *Id.* ¶ 11.

Courts have readily determined that these types of harms are irreparable and granted injunctive relief to the plaintiffs before them. *See, e.g., Mass. Ass'n of Older Ams. v. Sharp*, 700 F.2d 749, 753 (1st Cir. 1983) ("Termination of benefits that causes individuals to forgo such necessary medical care is clearly irreparable injury."); *Neighborhood House*, 2026 WL 2935933 at *8; *Carr v. Becerra*, No. 3:22cv988, 2023 WL 1280172 at *15 (D. Conn. Jan. 31, 2023).

**2. The Balance of the Equities and Public Interest Favor Relief.**

The balance of equities and public interest strongly favor preliminary relief. The final two factors—balancing the equities and weighing the public interest—"merge when the Government is the opposing party." *Nken,* 556 U.S. at 418. Here, Plaintiffs' strong likelihood of success on the merits, as described above, itself establishes that the equities and public interest favor emergency relief: "the government cannot suffer harm from an injunction that merely ends an unlawful

practice." *Massachusetts v. Nat'l Inst. Health*, 770 F. Supp. 3d 277, 326–27 (D. Mass. 2025), *aff'd,* 164 F.4th 1 (1st Cir. 2026). Rather, there is "substantial public interest 'in having governmental agencies abide by the federal laws.'" *Id.* at 326; s*ee also Dorcas Int'l Inst. of R.I. v. U.S. Citizenship & Immigr. Servs.*, No. 26-cv-132, 2026 WL 2042424, at *10 (D.R.I. July 15, 2026), appeal docketed, No. 26-1703 ("[A]n agency is not harmed by an order prohibiting it from violating the law"). Therefore, the injunction would serve the public interest, as it would force HHS and CMS to abide by existing law and regulations.

But to be clear: the interest at stake here is not the government's technical compliance with federal laws. The consequences for Plaintiffs and similarly situated individuals from across the country stemming from Defendants' actions cannot be overstated. Plaintiffs have fled for their lives to seek safety in the United States and will continue to suffer serious illness, injury and risk of death without the medical care they can no longer afford. Thus, the balance of the equities and the public interest is clear. Allowing Defendants to continue the SSI Medicaid Exclusion both violates the APA and would impact Plaintiffs and tens of thousands of similarly situated individuals in countless and devastating ways. Particularly here, where access to life-saving medical care is at stake, the government should not be permitted to "leverag[e] the needs of our most vulnerable fellow humans" to advance its own goals. *Martin Luther King, Jr. Cnty. v. Turner*, 785 F. Supp. 3d 863, 891 (W.D. Wash. 2025), *aff'd in part sub nom. County of King v. Turner*, 189 F.4th 819 (9th Cir. 2026). Such an action would be "breathtaking in its callousness." *Id.*

The public interest and the equities clearly favor Plaintiffs. Preliminary relief is necessary to protect the Medicaid coverage that is so vital to Plaintiffs and putative class members who are now unable to afford and access life-saving medical care.

**3. An injunction would have meaningful effect.**

The injunction here would have meaningful effect beyond vacatur and "is necessary to prevent Defendants from taking an end-run around vacatur through alternative agency actions." *New York v. U.S. Dep't of Just.*, No. 1:25-cv-00345-MSM-PAS, 2026 WL 2823528, at *11 (D.R.I. Sept. 21, 2026). Moreover, because states began implementing the SSI Medicaid Exclusion on October 1, 2026, an injunction is necessary to ensure CMS takes swift, affirmative steps to communicate with states that, going forward, Defendants will provide FFP for *all* SSI recipients who are eligible under their applicable State Plan, regardless of immigration status. An injunction barring implementation of the SSI Medicaid Exclusion would make it crystal clear that HHS and CMS must pay federally funded Medicaid coverage to all SSI recipients who are categorically eligible in their states under the applicable State Plan, regardless of immigration status, and that CMS will reject any State Plan Amendment that reflects the SSI Medicaid Exclusion.

The APA specifically "authorizes 'writs of prohibitory or mandatory injunction' in addition to vacatur." *California v. U.S. Dep't of Transp.*, 808 F. Supp. 3d 291, 312 (D.R.I. 2025) (quoting 5 U.S.C. § 703). Ancillary injunctive relief is especially appropriate where vacatur under the APA is not "sufficient to redress" the relevant

injuries. *Monsanto*, 561 U.S. 139, 165–66 (2010); *see also Texas v. Cardona*, 743 F. Supp. 3d 824, 898 (N.D. Tex. 2024) (enjoining defendants from "implementing or enforcing" the guidance documents at issue, as well as any future guidance documents promoting a similar interpretation against plaintiffs).

Here, injunctive relief is necessary because merely setting aside the SSI Medicaid Exclusion would not, on its own, necessarily prevent Defendants from continuing to permit states to implement the SSI Medicaid Exclusion. Through the April SHO Letter, July Implementation Tool, and August Technical Guide, Defendants have now unambiguously instructed states that Plaintiffs and the proposed class are not eligible for FFP-funded benefits, effective October 1, 2026, and that states are to submit their State Plan Amendments by December 31, 2026, memorializing the SSI Medicaid Exclusion. In order to return to a status quo ante, the Court should enter an injunction ordering the Defendants to inform all states participating in Medicaid (which is all states) that, going forward, Defendants must provide FFP for *all* SSI recipients who are eligible under their applicable state plan, regardless of immigration status. Without this injunctive relief, states may not be aware that the SSI Medicaid Exclusion was vacated and may still continue to deny class members Medicaid and submit a State Plan Amendment reflecting their exclusion, based on Defendants' previous policy that they were not eligible for FFP.

The Court also should not require Plaintiffs to post a bond in granting this relief. Rule 65(c) "vest[s] broad discretion in the district court to determine the appropriate amount" of a bond, "including the discretion to require no bond at all."

*Woonasquatucket*, 778 F. Supp. 3d at 477. Where requiring a bond "would have the effect of denying the plaintiffs their right to judicial review of administrative action," no bond is necessary. *Id.*; *see also Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971) (collecting cases). A bond would have that effect here because Plaintiffs are all impoverished, as evidenced by their SSI eligibility, and do not have the resources to post a significant or even modest bond.

## CONCLUSION

The Court should grant summary judgment to Plaintiffs, vacate the SSI Medicaid Exclusion pursuant to 5 U.S.C. § 706(2), declare the SSI Medicaid Exclusion unlawful under the APA because the Medicaid Act and PRWORA mandate that all SSI recipients who meet the state categorical eligibility requirements are entitled to federally funded Medicaid benefits, and issue an injunction pursuant to 5 U.S.C. § 703 prohibiting Defendants from implementing the SSI Medicaid Exclusion, including prohibiting Defendants from denying, withholding, or disallowing FFP for medical assistance furnished to class members on the basis of the SSI Medicaid Exclusion. The Court should further order Defendants, within 48 hours of entry of the Court's order, to file a notice confirming that they have informed all Medicaid-participating states of the Court's order.

In the alternative, the Court should provisionally certify the proposed class, stay the SSI Medicaid Exclusion pursuant to 5 U.S.C. § 705, and preliminarily enjoin Defendants from implementing it, including by denying FFP for class members, pending final judgment.

Dated: November 24, 2026

Respectfully submitted,

*/s/ Amy R. Romero*
Amy R. Romero (RI Bar No. 8262)
Kevin Love Hubbard (MA Bar No. 704772)*
Juan Bedoya (MA Bar No. 706954)*
LAWYERS' COMMITTEE FOR RHODE ISLAND
56 Pine Street, Suite 200
Providence, RI 02903
(401) 238-3953
Amy@lawyerscommitteeri.org
Kevin@lawyerscommitteeri.org
Juan@lawyerscommitteeri.org

Abigail Coursolle (CA Bar No. 266646)*
NATIONAL HEALTH LAW PROGRAM
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
Telephone: (310) 736-1652
Coursolle@healthlaw.org

Sarah Grusin (IL Bar No. 6316896)*
Jane Perkins (NC Bar. No. 9993)*
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
Telephone: (984) 278-7665
Grusin@healthlaw.org

Lynette Labinger (R.I. Bar No. 1645)
128 Dorrance Street
Providence, RI 02903
(401) 465-9565
LL@labingerlaw.com
Cooperating counsel,
ACLU FOUNDATION OF RHODE ISLAND

* Pro Hac Vice pending